IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES H. HAIRSTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. CV-00-303-S-BLW |
| v. | ) | |
| | ) | **CAPITAL CASE** |
| DAVE PASKETT, Warden, | ) | |
| Idaho Maximum Security | ) | **MEMORANDUM DECISION** |
| Institution, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this capital habeas matter is Respondent's

Motion to Dismiss Procedurally Defaulted Claims and Claims Filed After the

Expiration of the Statute of Limitations (Docket No. 107).  The parties have fully

briefed the issues, and the Court has determined that the decisional process will not

be aided by oral argument.  To avoid further delay, this matter shall be resolved on

the written record.  D. Idaho L. Civ. R. 9.2(h)(5).

For the reasons set forth more fully below, Respondent's Motion shall be

granted in part and denied in part.  The following claims will be dismissed with

prejudice: 6 (Confrontation Clause basis only), 7, 10, 11, 12, 14 (in part), 15, 16,

17, 18, 19, 23, 25, 27, and 28 (trial and sentencing portion).  The Court reserves its

**Memorandum Decision and Order - 1**

ruling with respect to Claims 1, 21(A), 26, and 28 (in part), but Petitioner will be ordered to show cause why the latter three claims should not be dismissed as untimely.

## BACKGROUND

In 1996, James Hairston was sentenced to death for the murders of William Fuhriman and his wife Dalma Fuhriman.  With the assistance of new counsel, Hairston filed a pre-appeal application for post-conviction relief in accordance with Idaho's special procedures applicable to capital cases.  Idaho Code § 19-2719. After holding an evidentiary hearing, the district court denied the petition.

In 1999, the Idaho Supreme Court affirmed Hairston's convictions, death sentences, and the lower court's order denying post-conviction relief.  *State v. Hairston*, 988 P.2d 1170 (1999) (*Hairston I*).  This Court subsequently appointed federal habeas counsel for Hairston, who filed an initial Petition for Writ of Habeas Corpus on December 15, 2000.

On May 18, 2001, Hairston returned to state court with a Second Petition for Post-Conviction Relief, alleging that he had been deprived of his constitutional right to the effective assistance of counsel on direct appeal and that he had been denied adequate resources during the sentencing hearing and the first post-conviction proceeding.  The federal case was stayed pending the completion of the

**Memorandum Decision and Order - 2**

second post-conviction case and other related state collateral matters.  The state

district court dismissed the petition, and the Idaho Supreme Court later dismissed

Hairston's appeal after applying the timeliness and waiver provisions of Idaho

Code § 19-2719.  *Hairston v. State*, 156 P.3d 552 (Idaho 2007) (*Hairston II*).

This Court lifted the stay on August 28, 2007, and permitted Hairston to file

a Second Amended Petition.  Respondent has now moved the Court to dismiss

selected claims as procedurally defaulted and/or untimely.[1]  The parties have fully

briefed the issues, and the Court is now ready to rule.

### EXHAUSTION AND PROCEDURAL DEFAULT

1.   <u>Fair Presentation</u>

A habeas petitioner must exhaust all potential remedies in state court before

a federal court can grant relief on a constitutional claim.  28 U.S.C.

§ 2254(b)(1)(A).  This requirement is technically satisfied when no state court

remedies remain available, but the federal court must also ask whether the

petitioner exhausted his potential remedies *properly*.  *O'Sullivan v. Boerckel*, 526

U.S. 838, 848 (1999).  To do so, he must have "fairly presented" each

constitutional claim at all levels of the state's appellate review process, giving the

state courts a full and fair opportunity to correct the alleged error before the federal

---

[1]  Respondent does not seek dismissal of Claim 5, part of 6, 8, and part of 21.

**Memorandum Decision and Order - 3**

court intervenes. *Boerckel*, 526 U.S. at 848; *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy this requirement of fair presentation, and vague references to broad federal constitutional principles, such as due process, equal protection, and the like are insufficient. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (similarity of claims is insufficient); *see also Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (appeal to broad principles insufficient). Instead, the petitioner must alert the state court to the specific constitutional provision that supports his claim, or he must have relied on state or federal cases that apply the federal constitutional rule. *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000); *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).

2.     Procedural Default

When a petitioner has not fairly presented a constitutional claim to the state courts, and it is clear that any attempt to do so now would be barred by a state procedural rule that is independent of federal law and adequate to support the state court's judgment, the claim is considered to be exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161 (1996). A federal claim is also defaulted when the petitioner actually attempted to raise it, but the state courts

**Memorandum Decision and Order - 4**

denied or dismissed the claim pursuant to an independent and adequate state rule. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A procedurally defaulted claim must be dismissed in a federal habeas proceeding, unless the petitioner can establish valid cause for the default and actual prejudice flowing from the constitutional error, or he can show that a fundamental miscarriage of justice has occurred. *Id.* at 750.

Only those state rules that are "independent and adequate" will suffice to preclude federal habeas review, however. To be independent, the rule must not be interwoven or intertwined with federal law. *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001). To be adequate, the rule must be "clear, consistently applied, and well-established" at the time of the petitioner's purported default. *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).

Procedural default is an affirmative defense, and the initial burden rests with the respondent to plead the existence of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). Once he has done so, the burden then shifts to the petitioner to "place the defense in issue" by asserting "specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 586. If the petitioner calls the adequacy of the rule into question, the respondent will

**Memorandum Decision and Order - 5**

bear the ultimate burden "of demonstrating that the bar is applicable–in this case

that the state procedural rule has been regularly and consistently applied in [state]

habeas actions." *Id*.

      3.    The *Beam* Exception

      In a situation that is apparently unique to Idaho, some constitutional

sentencing errors will be heard in a federal habeas proceeding regardless whether

the petitioner fairly presented them to the Idaho Supreme Court.  Specifically, a

panel of the Ninth Circuit Court of Appeals has determined that the Idaho Supreme

Court considers, either implicitly or explicitly, certain sentencing errors as part of

its automatic statutory review of death sentences under Idaho Code § 19-

2827(c)(1).  *Beam v. Paskett*, 3 F.3d 1301, 1306 (9th Cir. 1993) *partially overruled*

*on other grounds by Lambright v. Stewart,* 191 F.3d 1181, 1187 (9th Cir. 1999).

      The generosity that *Beam* bestows on capital habeas petitioners is not

boundless, and the scope of habeas review will be no broader than the Idaho

Supreme Court's mandatory review, which is limited to reviewing the imposition

of the death sentence in the case before the state appellate court.  *See Beam*, 3 F.3d

at 1306.  Claims that make a broad-based constitutional challenge to Idaho's death

penalty process, are based on matters outside of the record before the Idaho

Supreme Court, or allege that the Idaho Supreme Court itself erred during its direct

**Memorandum Decision and Order - 6**

or post-conviction appellate review, are not encompassed by that automatic review.

Nor is this Court persuaded by Hairston's argument that the Idaho Supreme Court scours the entire record for all constitutional errors of any stripe in all capital cases, either as part of its automatic sentencing review responsibilities or under some kind of expanded fundamental error review. The Court has addressed this argument in greater detail in other capital habeas cases, and it will not repeat that analysis here. *See, e.g., Creech v. Hardison*, CV 99-224-S-BLW, Docket No. 173, pp. 10-12; *McKinney v. Fisher*, CV 96-177-S-BLW, Docket No. 166, pp. 14-16; *Row v. Beauclair*, CV 98-240-S-BLW, Docket No. 417, pp. 6-7.

## DISCUSSION

### Claim 1:  The Colorado Evidence

In his first claim for relief, Hairston contends that the admission of evidence at his criminal trial related to the robbing and shooting of a convenience store clerk in Colorado a few days before the Fuhrimans were killed was so prejudicial to his right to a fair trial that he was denied due process of law under the Fourteenth Amendment.

Hairston raised a issue that touched on this subject in his opening brief on appeal, but he relied exclusively on Idaho evidentiary rules and state case law interpreting those rules. (State's Lodging C-12, pp. 23-33.)  He waited until after

the Idaho Supreme Court ruled against him to assert a violation of the "Fifth, Sixth, and Fourteenth Amendments to the United States Constitution" in his Memorandum in Support of Petition for Rehearing.  (State's Lodging C-19, pp. 2-3.)  The Idaho Supreme Court denied the Petition for Rehearing without comment. (State's Lodging C-20.)

Respondent argues that Hairston's citation to the Fourteenth Amendment in the post-decision memorandum is a procedurally improper manner in which to present a claim under state law and, at any rate, it is no more than a "naked" reference to due process.  Hairston counters that the issue that he raised in his opening brief is fundamentally the same as the current federal claim.  He also contends that the state courts have not consistently applied the rule forbidding the presentation of new claims in a petition for rehearing.

Given the apparent complexity of the procedural question, it appears that this claim might be more easily resolved on the merits under 28 U.S.C. § 2254(d). As a result, the Court will reserve its ruling until after Respondent has filed an answer to the Second Amended Petition.

### Claim 2:  Cross-Examination Beyond the Scope of Direct Examination

Hairston next alleges that his rights under the Fifth and Fourteenth

Amendments were violated when the prosecutor cross-examined him, allegedly

beyond the scope of direct, about whether he had previously handled a gun or shot

anyone.

This claim is properly exhausted to the extent that Hairston relies on his

Fifth Amendment privilege against self-incrimination because the Idaho Supreme

Court addressed the claim on that basis.  *Hairston I,* 988 P.2d at 1170 (citing

*Brown v. United States*, 356 U.S. 148 (1958)).  A state court's consideration of a

federal claim, even *sua sponte*, satisfies the exhaustion requirement.  *See*

*Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984) ("[t]here is no

better evidence of exhaustion than a state court's actual consideration of the

relevant constitutional issue").

### Claim 3:  Prosecutorial Misconduct

Hairston contends that his right to a fair trial under the Sixth and Fourteenth

Amendments was violated when the prosecutor engaged in several alleged acts of

prejudicial misconduct.

Hairston raised a similar claim in his direct appeal, but he did not expressly

cite the Sixth or Fourteenth Amendments until he submitted his Memorandum in

Support of Petition for Rehearing, relying instead on state cases and rules.  In one

of those case, however, the Idaho Court of Appeals framed the issue as a

constitutional one, indicating that "[p]rosecutorial misconduct reaches the level of a federal constitutional violation [when] the argument 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Reynolds,* 816 P.2d 1002 (Idaho Ct. App. 1991) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  What's more, the analysis for a prosecutorial misconduct issue under Idaho state law, focusing extensively on the defendant's "constitutional right to a fair trial," appears remarkably similar to the analysis for a federal claim. *See, e.g., State v. Drennon*, 883 P.2d 704, 707 (Idaho Ct. App. 1994); *Donnelly*, 416 U.S. at 643 (1974).

Though the issue is close, the Court concludes that Hairston sufficiently alerted the Idaho Supreme Court to the federal basis of this claim for exhaustion purposes.  *See Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (citation to state cases that analyze the federal claim is sufficient).

### Claim 4:  Admission of the Martin Tape

Hairston contends that the trial court's admission, over his objection, of a recorded conversation between himself and a defense witness, former county jail inmate James Martin, violated his Fourteenth Amendment right to due process of law.

Hairston raised a similar claim in his opening brief on appeal, but it was

based primarily on state discovery and evidentiary rules.  At one point in his brief,

he did assert that the late disclosure of this evidence "prevented him from receiving

a constitutionally guaranteed fair trial."  (State's Lodging C-12, p. 36.)  He also

cited a state court case, *State v. Smoot*, 590 P.2d 1001 (1978), that discussed

federal case law and analyzed the late disclosure of evidence as potentially

implicating the defendant's "constitutionally guaranteed fair trial."  *Id*. at 1005.

Following this standard, the Idaho Supreme Court indicated in Hairston's case that

the "question is whether the delay so prejudiced the defendant's preparation or

presentation of his defense that he was prevented from receiving a fair trial."

*Hairston*, 988 P.2d at 1178.

As with his other claims, Hairston's reliance on federal law in state court

was thin, at best, but this Court finds that the Idaho Supreme Court recognized the

federal constitutional dimension of the claim, and it has been properly exhausted.

### Claim 6:  Denial of Continuance

In Claim 6, Hairston asserts that the trial court's refusal to grant a

continuance to his counsel violated his right to confrontation under the Sixth

Amendment and his right to due process of law under the Fourteenth Amendment.

Respondent concedes that the due process basis has been properly

exhausted, but he argues that the Confrontation Clause portion has not.  The Court

agrees.  Hairston never explicitly relied on his right to confrontation in state court, and his references to "due process" are not sufficiently specific to incorporate that aspect of the claim.

### Claim 7:  Utter Disregard for Human Life

One of the statutory aggravating factors that the state district court found in this case was that Hairston "exhibited an utter disregard for human life."  (State's Lodging A-5, p. 878.)  Hairston claims that this factor is unconstitutionally vague and does not adequately channel the sentencer's discretion, in violation of the Eighth Amendment.  Rather than attempt to parse the language that Hairston used in his appellate briefing to resolve the exhaustion issue, the Court finds that this claim plainly fails on its merits.  *See* Rule 4 of the Rules Governing Section 2254 Cases (court may summarily dismiss meritless claims).

In 1981, the Idaho Supreme Court held that the "utter disregard" aggravating circumstance is meant "to be reflective of acts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded, pitiless slayer."  *State v. Osborn*, 631 P.2d 187, 200-01 (Idaho 1981).  Twelve years later, the United States Supreme Court upheld *Osborn*'s narrowing construction of the statute, turning aside a challenge that the aggravator was too indefinite and overinclusive to comply with the Eighth Amendment.

**Memorandum Decision and Order - 12**

*Arave v. Creech*, 507 U.S. 463, 472-73 (1993).

In *Creech*, the Supreme Court defined a "cold blooded, pitiless slayer" as one who kills "without feeling or sympathy," which is a factual finding that the sentencer will be able to base objectively on evidence of the defendant's "attitude toward his conduct and his victim." 507 U.S. at 472-73. The Court concluded that *Osborn*'s limiting construction both adequately guides the sentencer's discretion by providing objective standards and sufficiently circumscribes the class of offenders subject to the death penalty to satisfy the Eighth Amendment. *Id*. at 474-75.

In the present case, the state district court expressly applied the definition announced in *Osborn* and upheld in *Creech*, finding that Hairston's "lack of conscientious scruples against killing these two helpless human beings without any provocation, in their own home, catapults this case into the heightened dimension of utter disregard for human life as defined by the Idaho Supreme Court." (State's Lodging A-5, p. 878.)

For this reason, Claim 7 shall be dismissed.


## Claim 9:  Propensity to Commit Murder

In this claim, Hairston contends that the state court's finding that he had a

"propensity to commit murder that will probably constitute a continuing threat to society" was either not supported by sufficient evidence in the record or was proven by evidence that should not have been considered, in violation of the Eighth and Fourteenth Amendments.

Because Hairston alleges an error in the application of the law to the facts of his specific case, this claim was implicitly considered on appeal under the *Beam* rationale, and it will not be dismissed as procedurally defaulted.

**Claim 10:  Shifting of the Burden of Proof**

For his tenth claim, Hairston contends that Idaho Code § 19-2525(c) violates the Eighth and Fourteenth Amendments "by placing on a capital defendant the burden of proving by an unknown quantum of evidence the existence of mitigating circumstances to make the penalty of death unjust," and violates due process of law by depriving a capital defendant of adequate notice "of the allocation of responsibility."  (Docket No. 99, p. 21.)  Hairston never raised this claim in state court.  Because it is a broad-based attack on Idaho's death penalty scheme, it does not fall within the parameters of *Beam*'s rule.

If he attempted to return to state court and present the claim now, it would be barred by the special statutory provisions applicable to capital post-conviction proceedings.  In particular, Idaho Code § 19-2719(3) requires a capital defendant

**Memorandum Decision and Order - 14**

to raise any factual or legal challenge to the sentence or conviction that is known or reasonably could be known in a single post-conviction action initiated within 42 days of judgment.   Under Idaho Code § 19-2719(5), any claim that could have reasonably been known and was not raised in the first post-conviction proceeding is deemed waived.  Hairston's contention that Idaho's death penalty scheme unconstitutionally shifts the burden of proof to the defendant could have reasonably been known within 42 days of judgment, and it is therefore waived by operation of Idaho Code § 19-2719(3) and (5).[2]

The Court has previously concluded in several capital habeas cases that the waiver rule in § 19-2719 is clear, consistently applied, and well established.  The Court has reviewed the parties' specific arguments in this case and finds that Respondent has shown that the state courts continue to apply the waiver rule for claims that could be known within 42 days of judgment strictly and consistently. Because the state rule is adequate, this claim is now procedurally defaulted.[3]

---

[2]  Indeed, Hairston could have raised this issue during the sentencing phase of the trial, but this Court assumes that Idaho's post-conviction statute, which allows the presentation of "any legal or factual challenge to the sentence or conviction," also permitted him to raise the claim as late as the initial post-conviction action.  Idaho Code § 19-2719(3).

[3]  An exception exists for claims of ineffective assistance of trial counsel when the defendant is represented by the same attorney at trial and in the first post-conviction proceeding. *Hoffman v. Arave*, 236 F.3d 523, 531 (9th Cir. 2001).  That exception is not applicable here, because Hairston was appointed new counsel for the post-conviction matter.  *Leavitt v. Arave*, 371 F.3d 663, 693 (9th Cir. 2004).
    The Court will discuss, below, the special situation of the application of the waiver and

**Memorandum Decision and Order - 15**

The Court alternatively concludes that the claim fails on its merits.  In 1990, the United States Supreme Court rejected a nearly identical argument, concluding that when "a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency." *Walton v. Arizona*, 497 U.S. 639, 650 (1990) (overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584, 589 (2002)).  The Supreme Court recently reaffirmed this holding, noting that the states have significant freedom to implement the specific procedures governing the weighing of mitigating and aggravating circumstances.  *Kansas v. Marsh*, 548 U.S. 163, 170-71 (2006).

Before a death sentence may be imposed in Idaho, the prosecution is required to prove the aggravating circumstances beyond a reasonable doubt, and the defendant has the right to present mitigating evidence.  *See, e.g., State v. Charboneau*, 774 P.2d 299, 324 (Idaho 1989).  Therefore, the statute does not shift the burden to the defendant in a way that violates the Eighth or Fourteenth Amendments.

---

timeliness rules to claims of ineffective assistance of *appellate* counsel.

**Memorandum Decision and Order - 16**

**Claim 11:  Mandatory Death Penalty**

In a related claim, Hairston alleges that Idaho Code § 19-2515(c) creates an impermissible presumption that a death sentence is the appropriate punishment, in violation of the Eighth Amendment's prohibition against mandatory death sentences.  He never raised this claim in state court, and it is now defaulted by Idaho Code § 19-2719(5).

Like Claim 10, the claim also fails on the merits.  The Ninth Circuit has already rejected this same argument under an earlier version of the statute.  *Creech v. Arave*, 947 F.2d 873, 886 (9th Cir. 1991), overruled in part on other grounds by *Arave v. Creech*, 507 U.S. 463 (1993).  Moreover, in *Kansas v. Marsh*, the Supreme Court reiterated that if "the sentencer is not precluded from considering relevant mitigating evidence, a capital sentencing statute cannot be said to impermissibly, much less automatically, impose death."  548 U.S. at 171 (citing *Walton*, 497 U.S. at 652).

In Idaho, the sentencer is not precluded from considering all relevant mitigating evidence, and a death sentence will not be imposed if the sentencer concludes that the mitigating circumstances are sufficiently compelling to make the death penalty unjust.  Idaho Code § 19-2515(c).  Therefore, per *Creech*, *Walton*, and *Marsh*, the statute does not create an unconstitutional mandatory death

sentence for murder.

**Claim 12:   Length of Confinement Amounts to Cruel and Unusual Punishment**

In Claim 12, Hairston contends that the duration of his stay in prison under a sentence of death violates the Eighth and Fourteenth Amendments.  To the extent that he is challenging the *conditions* under which he is currently confined, this claim is more appropriately brought in a civil rights action under 42 U.S.C. § 1983.  To the extent that he contends that the *length* of his confinement awaiting the execution of his sentence is an independent violation under the Eighth and Fourteenth Amendments, the claim is both procedurally defaulted–because it has not been raised in state court and no remedy now exists–and fails on the merits.

The United States Supreme Court has never held that an extensive delay between the pronouncement of a death sentence and execution can amount to cruel and unusual punishment, though two current justices have indicated that the issue may be worth examination by the full Court.  *See Lackey v. Texas*, 514 U.S. 1045 (1995) (Stevens, J. & Breyer, J., discussing denial of certiorari and noting the claim has not been addressed);  *Knight v. Florida*, 528 U.S. 990, 993-94 (1999) (Breyer, J., dissenting from denial of certiorari); *Foster v. Florida*, 537 U.S. 990, 993 (2002) (Breyer, J., dissenting from denial of certiorari).  In contrast, Justice

Thomas has noted that he is "unaware of any support in the American constitutional tradition or in this Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed." *Knight*, 528 U.S. at 990 (Thomas, J., concurring in the denial of certiorari).

Circuit courts, including the Ninth Circuit, have determined that prolonged incarceration under a sentence of death does not offend the Eighth Amendment, particularly when the delay results from the prisoners unsuccessful pursuit of collateral relief and not from the State's dilatory tactics. *See McKenzie v. Day*, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); *Allen v. Ornoski*, 435 F.3d 946, 958-60 (9th Cir. 2006) (examining cases); *White v. Johnson*, 79 F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); *Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995) (delay of 15 years); *Chambers v. Bowersox,* 157 F.3d 560, 568, 570 (8th Cir. 1998)*; Free v. Peters*, 50 F.3d 1362, 1362 (7th Cir. 1995) (per curiam).

Hairston has been under a sentence of death for twelve years, and the majority of that time elapsed while he attempted to obtain collateral relief in the state and federal courts.  Given the current state of the law, he cannot establish a violation of the Eighth or the Fourteenth Amendments, and the Court will dismiss Claim 12.

**Memorandum Decision and Order - 19**

**Claim 13:   The Death Sentence Resulted from Passion, Prejudice, and**

**other Arbitrary Factors**

This is a *Beam* claim and will be considered in this proceeding.

**Claim 14:   Idaho's Death Penalty Scheme is Arbitrary**

Hairston claims that "Idaho's Death Penalty Scheme as applied by the Idaho

Supreme court wholly fails to channel the sentencer's discretion in any meaningful

way permitting the arbitrary and capricious imposition of the death penalty," in

violation of the Fifth, Eighth, and Fourteenth Amendments.

This claim is properly exhausted only to the extent that Hairston alleges that

the aggravating circumstances in Idaho Code § 19-2515 apply equally to all first

degree murder defendants and do not provide a meaningful way to distinguish

between those who deserve capital punishment and those who do not.  *See*

*Hairston I*, 988 P.2d at 1182.  The other factual bases were not presented to the

state court and would now fundamentally alter the nature of the claim that was

presented.  Furthermore, this is not a *Beam*-type of claim because it launches a

general attack on various statutory provisions.

**Claim 15:  The Propensity Aggravator is Vague and Overbroad**

While Hairston raised an issue in state court related to the state district

court's finding that he had a propensity to commit murder that probably constituted

a continuing threat to society, it was within the context of an argument regarding a lack of proportionality in the punishment and the supposed absence of evidence supporting this circumstance.  (State's Lodging C-12, pp. 57-58.)  He did not contend that the aggravating factor was "vague, overbroad and lacks sufficient guidelines."

Because this is a facial attack on a statutory provision, rather than a specific challenge to its application in this case (see Claim 9), the claim is not saved by *Beam* from procedural default, and it will be dismissed.

### Claims 16-18:        Claims Arising Under the International Covenant on Civil and Political Rights (ICCPR)

Hairston has never raised these international law claims in the Idaho Supreme Court.  Nevertheless, he contends that they do not need to be presented to the state court because "the treaty power is subject to the original jurisdiction of the federal courts."  (Docket No. 113, p. 42.)  The Court is not persuaded that the exhaustion requirement can be overlooked for this particular type of federal claim, as Hairston suggests.

A federal court cannot grant a state prisoner's application for habeas relief unless the prisoner "has exhausted the remedies available in the courts of the State," or shown that "there is an absence of available State corrective process."

28 U.S.C. § 2254(b)(1)(A),(B).  While it is true that habeas relief can lie for violations of the "treaties of the United States," 28 U.S.C. § 2254(a), there is no exception to the exhaustion requirement in the statute for claims that arise from the United States' treaty obligations.  *Cf. Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir. 2005) (finding a claim under the ICCPR to be unexhausted and procedurally barred).  In short, when a state prisoner is seeking relief from a state criminal judgment, the state courts must have the first opportunity to correct any alleged error of federal law.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Hairston does not contend that he still has a potential remedy in the state courts for these claims.  They are now procedurally defaulted, and are not saved by *Beam*.

### Claim 19:  Equal Protection Violation

Hairston claims that the standards for imposing death sentences in Idaho vary to such a degree from county to county that he was deprived of his constitutional right to equal protection of the laws.  This issue has not been presented to the Idaho Supreme Court, and because it is too late to do so now, it is procedurally defaulted.  It is not a *Beam* claim because it amounts to a broad-based attack on the death penalty process and relies on facts outside of the record.

### Claim 20:  Conflict of Interest by Extradition Counsel

Memorandum Decision and Order - 22

Hairston next contends that his appointed counsel at the extradition proceeding in Washington state suffered from a conflict of interest because he also represented the co-defendant, Richard Klipfel, in that same proceeding.  This claim was fairly presented and is properly exhausted under the Sixth and Fourteenth Amendments, but not under the Fifth or Eighth Amendments.

### Claim 21:  Ineffective Assistance of Trial Counsel

Hairston brings several allegations under a general umbrella of ineffective assistance of trial counsel.  The following allegations were clearly presented to the Idaho Supreme Court and are now properly exhausted:

1.     Trial counsel failed to move to disqualify the trial judge after he presided over the entry of Klipfel's guilty plea;

2.     Trial counsel failed to prevent a psychiatrist's report from being attached to the presentence report when it was delivered to the trial judge.

(State's Lodging C-13, pp. 20, 21-24.)

Hairston also contends that his counsel were ineffective in advising him about whether he should testify because counsel did not anticipate the possibility that this testimony would open the door to the admission of the "Colorado evidence."  While Hairston argued in state court that his attorneys were ineffective

in opening the door to this evidence, he focused on their failure to object to "one officer's reference to the gun and its connection with Colorado" rather than on counsel's advice to him about testifying.  (State's Lodging C-13, pp. 20-21.) Despite the oblique nature of his argument, the Idaho Supreme Court touched on the subject more directly when it noted that, "it appears that counsel made a tactical decision to allow Hairston to testify knowing the risk that it might open the door for the admission of the Colorado evidence."  *Hairston I*, 988 P.2d 1170, 1187.

The Ninth Circuit has held that a habeas petitioner may rely on additional facts in federal court to flesh out the same constitutional claim, as long as those facts do not "fundamentally alter the legal claim already considered by the state courts."  *Lopez v. Schriro*, 491 F.3d 1029 (9th Cir. 2007) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).  This Court concludes that Hairston's reliance on additional facts related to this sub-claim would not fundamentally alter the issue that the Idaho Supreme Court actually considered.

Hairston also alleges that the trial court's denial of counsel's request for a mitigation specialist deprived him of "his federal constitutional right to the effective assistance of counsel under the Sixth Amendment, to a reliable capital sentencing proceeding, under the Eighth and Fourteenth Amendments, and to due process and equal protection of laws under the Fourteenth Amendments."  (Docket

**Memorandum Decision and Order - 24**

No. 99, p. 36.)  In state court, Hairston claimed that the denial of a mitigation specialist deprived him of his rights under the "Fifth, Sixth, Eighth and Fourteenth Amendments," and the Idaho Supreme Court ultimately concluded that "[w]e do not believe that the district court abused its discretion or violated the United States or Idaho Constitutions by refusing to appoint a 'mitigation specialist.'" *Hairston I*, 988 P.2d at 1190.  Accordingly, this sub-claim was also fairly presented and is now properly exhausted.

For these reasons, Claim 21 will not be dismissed as procedurally defaulted.

### Claim 21(A):  Unconstitutional Jury Instruction

Next, Hairston asserts that his constitutional rights to confrontation and due process of law were violated when the trial court provided the jury with instruction 6-A, which he contends impermissibly vouched for the co-defendant's credibility.

Contrary to Respondent's argument, Hairston raised this same claim during his first appeal to the Idaho Supreme Court, introducing the issue in his brief as one of "fundamental error under the Sixth and Fourteenth Amendments under the U.S. Constitution."  (State's Lodging C-13, p. 27.)  It is properly exhausted.

### Claims 23:  Jury Sentencing

In *Ring v. Arizona*, 536 U.S. 584 (2002), the United States Supreme Court held that a defendant in a capital case has a Sixth Amendment right to have a jury,

not a judge, decide the facts that make him eligible for the death penalty.  Hairston alleges a violation of this right, but the Supreme Court has already determined that *Ring* is not retroactive to cases in federal habeas proceedings that became final before it was decided.  *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (relying on *Teague v. Lane*, 489 U.S. 288 (1989)).  Hairston's state court judgment became final in May 2000, two years before *Ring* was announced.  Relief is *Teague*-barred in this proceeding.  *See Leavitt v. Arave*, 383 F.3d 809, 835 (9th Cir. 2004).

Hairston nevertheless argues that the Court should withhold its ruling because he is currently pursuing post-conviction relief in the Idaho Supreme Court on the jury sentencing claim.  The Court is not persuaded.

The current state court case is on remand from the United States Supreme Court for further consideration in light of *Danforth v. Minnesota*, 128 S.Ct. 1029 (2008).  In *Danforth*, the Supreme Court held that the state courts are not bound by the non-retroactivity principles set forth in *Teague*.  *Id*. at 1042.  At issue in Hairston's state court appeal, then, is whether the constitutional rule from *Ring* should be applied retroactively as a matter of *state law*.   Regardless of what happens there, it is still clear that Hairston has no remedy in *federal* court on this claim, under *Summerlin*, and the claim must be dismissed on that basis.

### Claim 24:  Consideration of Hairston's Eligibility for Parole

This is a *Beam* claim, and it has been properly exhausted on that basis.

**Claim 25:  Ineffective Assistance of Appellate Counsel**

In Claim 25, Hairston alleges numerous claims of unconstitutionally deficient performance by his appointed counsel during the direct appeal.  He presented these allegations for the first time in his second post-conviction petition, which was dismissed by the Idaho Supreme Court in 2007 as untimely under Idaho Code § 19-2719(5).  *Hairston II*, 156 P.3d at 558-59.  Hairston contends that the rule governing when claims of ineffective assistance of appellate counsel can be presented is unclear and has not been consistently enforced.  For the reasons that follow, the Court disagrees.

The basic rule in Idaho's expedited capital post-conviction procedure is that all claims that can reasonably be discovered within 42 days of the entry of judgment must be raised in a single post-conviction proceeding or they will be deemed waived.  Idaho Code § 19-2719(3),(5).  In 1993, the Idaho Supreme Court recognized that claims of ineffective assistance of appellate counsel simply cannot be raised that early because an appeal has not even begun before the deadline passes.  *Paz v. State*, 852 P.2d 1355, 1357 (Idaho 1993).  Instead, the court held:

> I.C. § 19-2719, while not foreclosing those claims, implicitly establishes a framework for timeliness.  Claims that were not known or could not have reasonably been known within 42 days of judgment must be asserted within a reasonable time after they are known or reasonably could have

been known.

*Id.* at 1357.

In applying this "reasonable time" rule to the case before it, the Idaho Supreme Court reasoned that the clock should begin ticking when the opening brief is filed, because it is at that point that the capital defendant should know which issues his or her counsel had included or omitted in the appeal. *Id.* The court then concluded that the lapse of four years between the filing of the opening brief and the submission of the successive post-conviction petition was not reasonable. *Id.*; *see also Fields v. State*, 17 P.3d 230, 234 (Idaho 2001) (applying *Paz* and finding that a delay of two and one-half years was likewise unreasonable).

Although this Court has previously honored the state court's invocation of the *Paz* rule to bar federal review of claims of ineffective assistance of appellate counsel, it has struggled with the inherent difficulties arising from application of the rule in certain circumstances. *See, e.g., Sivak v. Hardison*, CV 96-56-S-BLW, Docket No. 279, pp. 5-6; *Fields v. Klauser*, CV 95-422-S-EJL, Docket No. 127, pp. 9-14; *Porter v. Paskett*, 98-198-S-EJL, Docket No. 189, pp. 29-31, Docket No. 205, pp. 2-6. The Court's concern is not with the reasonable time requirement itself but instead with the Idaho Supreme Court's decision to peg the beginning of that period to the filing of the opening brief on appeal, which raises potentially

serious problems in implementation.

For instance, under the most cramped reading of the rule, a capital defendant could be required to submit a successive post-conviction petition while the direct appeal is still pending. The post-conviction case would then likely need to be stayed until the conclusion of the direct appeal, as the district court will have no basis for resolving whether the defendant can show that he was prejudiced by counsel's errors or omissions until the appeal has been resolved against him. The defendant may also be required to draft his new petition without the assistance of counsel but in accordance with the heightened pleading requirements for successive petitions in Idaho Code § 19-2719(5)(a), or perhaps with the assistance of his currently appointed attorney who must then argue his or her own ineffectiveness. In this Court's view, these problems strike at some of the same core fairness concerns that the Ninth Circuit found to exist when Idaho courts routinely failed to appoint new attorneys to assist capital defendants in raising claims of ineffective assistance of *trial* counsel within 42 days of judgment. *Hoffman v. Arave*, 236 F.3d 523, 531 (9th Cir. 2001) (holding that the defendant did not have "a reasonable opportunity to have the issue as to the claimed right heard and determined").

In more recent cases (including Hairston's case), however, the Idaho

Supreme Court has also considered the date on which new counsel was appointed in the federal habeas action to determine the reasonableness of the total delay. Thus, in *Porter v. State*, 32 P.3d 151 (Idaho 2001), the court noted that, "Porter's second post-conviction petition was filed more than one year after the Federal Defenders' office was appointed to represent Porter for purposes of his federal habeas corpus petition and more than five months after Porter's habeas petition containing identical claims was filed in the U.S. District Court." *Id*. at 154.  In this passage the state court seems to acknowledge that the reasonable time requirement should take into account the delay after the appeal has concluded and new counsel has been appointed.  On the facts in *Porter*, the court concluded "that the three-year span from the date of Porter's first appellate brief to the assertion of his current claims is an unreasonable length of time for the pursuit of post-conviction relief." *Id*.

In Hairston's own case, the Idaho Supreme Court again discussed the relationship between the appointment of new counsel and the filing of the successive post-conviction petition:

> Hairston raised his ineffective assistance of appellate counsel claims on May 18, 2001, three years after his appellate briefing of March 1998, nearly a year after the appointment of the Federal Defender on June 5, 2000, and nearly five months after the filing of his federal habeas petition on December 15, 2000.

**Memorandum Decision and Order - 30**

156 P.3d at 558.  After noting that Hairston had failed to show that his situation differed from those in *Paz*, *Fields*, and *Porter*, the court concluded that the three-year gap between the filing of the appellate briefing and the successive petition was unreasonable.  *Id*. at 559.

As a result, the unfairness that could be hypothesized under the *Paz* rule for raising this species of constitutional claim has yet to materialize.  In each capital case, the petitioners have waited years before raising the issue, not weeks or months, and in more recent cases, the Idaho Supreme Court has reviewed the total delay within the context of the appointment of new counsel on habeas review. Hairston himself waited nearly a year after the appointment of federal habeas counsel and five months after filing his federal Petition, factors that were deemed relevant by the state court.

Perhaps for this reason, a panel of the Ninth Circuit has confronted the adequacy of the rule, albeit in a general way, and has indicated that it had "not been directed to any case that construes 'reasonable time' in an overly restrictive manner."  *Leavitt v Arave*, 383 F.3d 809, 840 (9th Cir. 2004).  In *Leavitt*, the panel upheld the dismissal of claims of ineffective assistance of appellate counsel that rested on Idaho Code §19-2719(5).  *Id.*

Given that the state court has not enforced the reasonable time rule as it

pertains to this type of claim in an overly technical or harsh manner, and in light of the Ninth Circuit's general endorsement of the rule in *Leavitt*, the Court concludes that Respondent has demonstrated that the state law ground is adequate to preclude federal review in this case.[4]

### Claim 26:  Denial of Resources

Hairston next contends that the trial court's denial of his request for funds to hire a mitigation specialist to assist him in preparing for the penalty phase of the trial deprived him of his rights under the Sixth, Eighth, and Fourteenth Amendments.  He alleges that a mitigation specialist that he has retained during the federal proceeding, Dr. Ricardo Weinstein, has uncovered evidence of possible brain damage.

Hairston raised this subject in the Idaho Supreme Court on two occasions. First, during the initial post-conviction appeal, he argued that the denial of funds for a mitigation specialist deprived him of his rights under the Fifth, Sixth, Eighth

---

[4]  Recently, however, the Idaho Supreme Court held that the presumptively reasonable time for raising a newly discovered claim in a successive petition is 42 days from the date that the claim could have been known, "unless the petitioner shows that there were extraordinary circumstances that prevented him or her from filing the claim within that time period."  *Pizzuto v. State*, 2008 WL 466568 at *6 (Idaho 2008).

While *Pizzuto* did not deal with issues of ineffective assistance of appellate counsel, if *Paz* and *Pizzuto* are combined to bar such claims in the future solely because they were not raised within 42 days of the filing of the opening brief on appeal, the State will likely find itself in a difficult position in federal court distinguishing that situation from the one that existed in *Hoffman*, for the reasons given herein.

and Fourteenth Amendments, but he provided very little factual detail or evidence in support of the claim.  The Idaho Supreme Court reached the merits and found no constitutional violation.  *Hairston I*, 988 P.2d at 1190.

In the successive post-conviction action, Hairston offered Dr. Weinstein's findings for the first time, apparently in an attempt to prove that the denial of funds prejudiced him.  In *Hairston II*, the Idaho Supreme Court concluded that the issue was precluded by the doctrine of res judicata, because it had been raised before, and that it was barred by Idaho Code § 19-2719(5) because the claim was known within 42 days of judgment.  156 P.3d at 559.

Consequently, while Hairston raised the constitutional claim in state court at the appropriate time, he waited until the successive post-conviction action to provide additional material facts, and the Idaho Supreme Court declined to consider the new facts.

Rather than presenting a straight exhaustion/procedural default question, this issue is more appropriately framed as whether Hairston will be permitted to rely on the Weinstein evidence in federal court under 28 U.S.C. § 2254(e)(2) to prove the same general legal claim that he raised in the first appeal.  A decision on that issue is premature at this stage in the proceeding.  Furthermore, depending on the Court's ultimate conclusion regarding whether Hairston complied with the federal

statute of limitations for raising this claim, as discussed below, the issue may prove to be moot.

### Claim 27: *Ring* Violations

Hairston raises various sub-claims that share a common legal underpinning in the constitutional rule announced in *Ring v. Arizona*, 536 U.S. 584 (2002). Like Claim 23, this claim is *Teague*-barred, and it will be dismissed on that basis.

### Claim 28: Judicial Bias

In his final claim, Hairston alleges that the state court district judge was biased. Though he raised an issue in the Idaho Supreme Court regarding the judge's bias, it was based on a letter that the judge had written to the members of the Fuhriman family long after sentencing. To the extent that Hairston alleges bias at trial and sentencing in Claim 28, rather than at the successive post-conviction proceeding, that aspect of his claim was not fairly presented is now procedurally barred.

With respect to the issue that was raised, the Idaho Supreme Court concluded that because Hairston had not properly invoked the district court's jurisdiction to hear a successive petition under Idaho Code § 19-2719, he had not shown that he possessed a right to an "unbiased hearing" in the first instance. *Hairston II*, 156 P.3d at 560. This Court has some concern about the adequacy of

this particular line of reasoning, and it chooses to reserve its ruling on the procedural default issue.  Also, like the previous claim, the default issue may prove to be moot depending on the resolution of Respondent's statute of limitations argument with respect to this claim.

## CAUSE AND PREJUDICE

Hairston still has an opportunity to avoid dismissal of those claims that rest on an independent and adequate state law ground if he can establish valid cause for the default and show actual prejudice as a result of the constitutional error.[5] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show "cause," he must demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Id.* at 488. Here, he argues that his appointed counsel's failure to raise certain claims on appeal was the cause of his default of those claims.

Ordinarily, a criminal defendant bears the risk of attorney error, and "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486.  Only a violation of the defendant's

---

[5] Hairston does not argue that he is actually innocent, and that exception will not be addressed.  *See Murray,* 477 U.S. at 495-96.

**Memorandum Decision and Order - 35**

constitutional right to the effective assistance of counsel will be attributable to the state. *Id.* at 488-89.  Put another way, counsel's failure to preserve a constitutional claim in state court will amount to a valid cause for the default of that claim only when counsel's error is, itself, an independent constitutional violation. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Moreover, the ineffective assistance claim on which the petitioner relies as the alleged cause for the default of another habeas claim must also be free from procedural default. *Id.*

All of Hairston claims of ineffective assistance of appellate counsel were dismissed under Idaho Code §19-2719(5).  The Court has already determined that the application of this procedural bar is adequate to prevent federal review.  Under *Edwards*, these allegations cannot serve as a legitimate cause to excuse other defaulted claims.

The Court declines to address Hairston's alternative argument that the trial court's "denial of resources" serves as a legitimate cause because he has failed to provide any argument or citation in support of that assertion.  Accordingly, the claims that the Court has found to be procedurally defaulted in this proceeding will be dismissed.

## STATUTE OF LIMITATIONS

As an alternative basis for dismissal, Respondent argues that Claims 21(A)

and 25 through 28 in the Second Amended Petition are untimely.  Hairston has not responded to this part of Respondent's Motion.

Because the Court has already determined that Claim 25 is procedurally defaulted and Claim 27 is *Teague*-barred, it sees no reason to address Respondent's statute of limitations argument related to those claims.  Instead, the Court will focus on Claims 21(A), 26, and 28 (non-defaulted portion).

### Standard of Law

Hairston filed his initial Petition on December 15, 2000, and this case is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) (enacted in 1996).

To further the interests of comity, federalism, and finality, Congress included a one-year statute of limitations when it enacted AEDPA.  28 U.S.C. § 2244(d)(1).  The one-year period  begins to run from the date of one of four triggering events, as specified in 28 U.S.C. § 2244(d)(1)(A)-(D).  The most common event is the date upon which the judgment became final in state court, either after the direct appeal has concluded or after the time for seeking an appeal expired.  28 U.S.C. § 2244(d)(1)(A).  Additional statutory subsections provide for a later starting date when any of the following situations are present: (1) the state has created an impediment to filing a federal petition; (2) the United States

Supreme Court has determined that a new constitutional right shall be retroactive;

or (3) the petitioner has discovered new evidence that could not have been obtained

previously through the exercise of reasonable diligence.  28 U.S.C. §

2244(d)(1)(B),(C),(D).

AEDPA's one-year period will be tolled for all of  "[t]he time during which

a properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).

The period may also be tolled for fairness reasons when extraordinary

circumstances prevented the petitioner from filing on time ("equitable tolling").

*See, e.g., Shannon v. Newland*, 410 F.3d 1083, 1089-90 (9th Cir. 2005).  A litigant

seeking equitable tolling bears the burden of establishing that he has been pursuing

his rights diligently and that some extraordinary circumstance stood in his way.

*Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).

All claims in an amended habeas petition must also comply with the statute

of limitations.  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  Relation back to the

filing date of the initial pleading is permissible only when the new claims "arose

out of the conduct, transaction, or occurrence set forth or attempted to be set forth

in the original pleading."  *Id*. at 659 (applying Fed. R. Civil P. 15(c)).  In the

habeas context, a new claim will be considered timely under the relation back

doctrine when the "original and amended petitions state claims that are tied to a common core of operative facts. " *Id.* at 664.

## Discussion

Hairston's state court judgment became final on May 22, 2000, when the United States Supreme Court denied his Petition for Writ of Certiorari. *Hairston v. Idaho*, 529 U.S. 1134 (2000). In accordance with 28 U.S.C. § 2244(d)(1)(A), AEDPA's limitations period began to run at that time and expired one year later, on May 22, 2001. Though Hairston filed his original Petition within that year, he did not raise Claim 21(A) until his First Amended Petition in June 20, 2001, and he waited until his January 16, 2007 Second Amended Petition to include Claims 26 and 28.[6] Absent a later starting date for any of these new claims under § 2244(d)(1)(B)-(D), statutory or equitable tolling, or relation back, the claims are untimely.

Hairston failed to respond to this aspect of Respondent's Motion, and the Court is not inclined to provide arguments on his behalf. Because of the nature of this case, however, and out of an abundance of caution, the Court will give Hairston one final opportunity to respond before rendering its final decision. If he does not intend to respond, he shall file a notice expressing that intent.

---

[6] The Court credits the date on which Hairston lodged the Second Amended Petition rather than that date on which the Court ordered the Clerk to file the pleading.

**Memorandum Decision and Order - 39**

**CONCLUSION**

Based on the foregoing, the following claims are properly exhausted, timely, and will not be summarily dismissed:  2, 3, 4, 5, 6 (due process basis only), 8, 9, 13, 14 (in limited part), 20, 21, 22, and 24.

The following whole or partial claims will be dismissed as procedurally defaulted:  6 (Confrontation Clause basis), 10, 11, 12, 14 (in part), 15, 16, 17, 18, 19, 25, and 28 (trial and sentencing issue).  The Court will also dismiss Claims 7, 10, 11, and 12 on alternative grounds as plainly lacking in merit under controlling law and Claims 23 and 27 as *Teague*-barred.

Finally, the Court reserves its ruling with respect to Claims 1, 21(A), 26, and part of Claim 28.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion to Dismiss Procedurally Defaulted Claims and Claims Filed After the Expiration of the AEDPA Statute of Limitations (Docket No. 107) is GRANTED in part and DENIED in part.  For the reasons given in this Memorandum Decision, the following claims in the Second Amended Petition are dismissed with prejudice:  6 (Confrontation Clause portion), 7, 10, 11, 12, 14 (in part), 15, 16, 17, 18, 19, 23, 25, 27, and 28 (trial and sentencing portion).

IT IS FURTHER ORDERED that within fourteen days of the date that this Order is entered on the docket, Petitioner shall filed a brief, no longer than ten pages, showing cause why Claims 21(A), 26, and 28 (non-defaulted portion) should not be dismissed as untimely.  Petitioner's failure to file a response will result in dismissal of those claims without further notice.  Respondent may submit a reply, also limited to ten pages, within seven days of receiving Petitioner's brief. The Court will thereafter decide the matter and issue a new scheduling order for the filing of additional pleadings.

DATED:  **August 15, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 41**