UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES H. HAIRSTON,<br><br>                 Petitioner,<br><br>v.<br><br>RANDY BLADES, Warden of the Idaho Maximum Security Institution,<br><br>                 Respondent. | Case No. 1:00-cv-00303-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in this capital habeas matter is Petitioner James Hairston's Motion to Alter or Amend Judgment. (Dkt. 196.) For the reasons that follow, the Motion will be denied.

## STANDARD OF LAW

Reconsideration of a final judgment under Rule 59(e) of the Federal Rules of Civil Procedure is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). A losing party cannot use a post-judgment motion to reconsider as a means of litigating old matters or presenting arguments that could have been raised before the entry of judgment. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 1**

As a result, there are four limited grounds upon which a motion to alter or amend judgment may be granted: (1) the motion is necessary to correct manifest errors of law or fact; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in the law. *Turner v. Burlington North. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citation omitted).

**DISCUSSION**

Hairston's seeks reconsideration of the Court's decision to deny relief on Claim 5 in his Second Amended Petition. In that claim, Hairston contended that he was deprived of his right to a fair and impartial jury under the Sixth and Fourteenth Amendments because the trial court did not dismiss Juror Renee Reynolds for cause. In rejecting this argument on direct appeal, the Idaho Supreme Court found that "while Reynolds acknowledged hearing television news reports about the case and hearing the sheriff discuss the case once at a neighborhood watch meeting, she made it clear through extensive questioning that she would render a verdict based on the evidence at trial." *State v. Hairston*, 988 P.2d 1170, 1180-81 (Idaho 1999).

Under clearly established federal law, potential jurors are not automatically disqualified from service simply because they have learned facts about the crime or the defendant from outside sources. *See*, *e.g.*, *Murphy v. Florida*, 421 U.S. 794, 800 (1975). Moreover, a state court's resolution of whether a potential juror is biased turns to a large degree on credibility issues that are assessed during voir dire, and its decision is entitled

**MEMORANDUM DECISION AND ORDER - 2**

to deference on habeas review, even under pre-AEDPA law. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). Given the controlling federal law, this Court concluded that the Idaho Supreme Court's decision was not unreasonable, primarily because Juror Reynolds stated during voir dire — on numerous occasions — that she could be fair and impartial and base her verdict solely on the evidence that was presented at trial. (Dkt. 196, p. 22.)

Hairston notes correctly that in making its assessment the Court also found that the case did not engender the type of pervasive or negative publicity that could lead to implied bias or presumed prejudice. (Dkt. 192, p. 24.) Locking onto this part of the Court's analysis, Hairston now contends that the Court "overlooked the fact that [he] cited therein the state court record of nearly 150 pages of newspaper articles and local television news reports about the Downey murders." (Dkt. 196, p. 2.) There is no doubt that the media covered this crime, but the coverage was largely factual in nature, and there is no evidence that voir dire was an ineffective mechanism to ferret out lingering prejudice. (State's Lodging A-3, pp. 464-602.) It is for this reason that the state district court denied Hairston's motion to change venue, a decision that Hairston chose not to appeal. Perhaps the greatest danger of pretrial prejudice to Hairston was from media reports that he was involved in the shooting of a store clerk in Colorado, but the jury eventually heard that evidence anyway. In short, Hairston has not changed the Court's view that the record fails to show the type of extremely negative publicity or strong public opinion from which one could infer that Juror Reynolds was biased despite her responses in voir dire and the state court's contrary findings.

**MEMORANDUM DECISION AND ORDER - 3**

Nor does the relationship between Juror Reynolds and Jessie Fuhriman, the victims' daughter-in-law, change the result. Juror Reynolds's daughter and Jessie Fuhriman's daughter played volleyball together on the same team, and Reynolds and Jessie sat together during volleyball games. In other words, they knew each other in that context, and there is no indication that their relationship went much beyond that. More to the point, when Juror Reynolds was asked whether the fact that she knew Jessie would affect her ability to judge her testimony, she answered, "no." (State's Lodging A-6, p. 475.)

For these reasons, Hairston has not persuaded the Court that any of the limited factors for reconsideration of its final judgment are applicable in this case.

## ORDER

IT IS ORDERED that Petitioner's Motion to Alter or Amend Judgment (Dkt. 196) is DENIED.

DATED: **July 28, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge