UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| JAMES H. HAIRSTON,<br><br>               Petitioner,<br><br>vs.<br><br>RANDY BLADES, Warden,<br><br>               Respondent. | Case No. 1:00-cv-00303-BLW<br><br>**CAPITAL CASE**<br><br>**MEMORANDUM DECISION AND ORDER** |


The United States Court of Appeals for the Ninth Circuit granted Respondent's motion for a limited remand (*see* Dkt. 209), to permit the District Court to reconsider the certified aspect of Claim 21 in light of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), which held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. Having considered the briefing of the parties, the Court enters the following Order.

## BACKGROUND

Because the parties are familiar with the factual and procedural background of this case, the Court will not recite that background in detail here. Rather, the Court sets forth only those facts necessary to resolve the *Martinez* issue. The Court incorporates the

MEMORANDUM DECISION AND ORDER - 1

factual description set forth in its Memorandum Decision and Order dated March 30, 2011. (Dkt. 192.)

James H. Hairston's state criminal case was adjudicated in the Sixth Judicial District Court, in Bannock County, Idaho. Hairston was represented at trial by attorneys Randall Schulties and Thomas Eckert. Early in the case, Hairston's attorneys sought and received funding for an investigator (Wayne Millward) and a psychologist (Dr. Mark Corgiat) for trial and sentencing preparation.

On October 23, 1996, two days before the scheduled sentencing hearing, counsel sought funding for a mitigation specialist (Mary Goody) and an extension of time so that the expert could testify at sentencing. District Judge Peter D. McDermott granted a brief continuance, to November 7, 1996, but denied the expert funding request, concluding:

> [An] adequate defense will certainly be available to the defendant without
> the so-called mitigation specialist. The defendant is represented by
> competent counsel and they're fully capable of presenting whatever
> mitigation evidence they deem appropriate to the Court. I don't think the
> motion is timely, either, but for these reasons, I'm doing to deny your
> request.

(State's Lodging A-8, p. 2629-30.)

Despite the absence of a mitigation specialist, significant mitigating evidence was put before the trial court, both from the defense and from the material in the presentence investigation report. Based on this information, the trial court found that Hairston was underdeveloped as child, was sexually abused on at least two occasions, and that he was raised by a strong and domineering woman who did not show love or affection. His father abandoned the family when Hairston was a small boy, and Hairston believed that his

**MEMORANDUM DECISION AND ORDER - 2**

father could not be located, but his life changed significantly when he learned that his

father simply chose not to contact him. The trial court also considered that Hairston was

young when the crimes occurred, had previously successfully completed juvenile

probation, had no adult criminal record, had expressed remorse for his crimes and

behaved well in the county jail. Finding that "[a]ll of the mitigating circumstances . . .

weigh as pebbles in comparison to a boulder with respect to the cold-blooded, calculated,

premediated murders of Duke and Dahlma Fuhriman," the trial court sentenced Hairston

to death. (State's Lodging A-5, p. 880.)

In his first state post-conviction application, Hairston raised a claim that the trial

court violated Hairston's constitutional rights by denying funding for a mitigation expert

for sentencing *and* a claim that his trial attorneys were ineffective in failing to procure

necessary expert defense assistance and use of a mitigation specialist or expert at

sentencing. These claims were denied by the state district court. (State's Lodging B-10, p.

336.) The trial court error mitigation claim was included among issues for appeal, but the

ineffective assistance mitigation claim was not. (State's Lodging C-13.) The trial court's

decision was affirmed on appeal. *State v. Hairston*, 988 P.2d 1170 (Idaho 1999).

Hairston filed his initial federal Petition for Writ of Habeas Corpus in 2000.

Currently, Petitioner's Second Amended Petition is the operative pleading in this case.

(Dkt. 99.) In the midst of his federal habeas action, Hairston returned to state court with a

second post-conviction application to re-assert his claim that the trial court violated his

constitutional rights by denying funding for a mitigation expert for sentencing,

augmenting the application with expert testimony that Hairston suffered from brain

**MEMORANDUM DECISION AND ORDER - 3**

damage. In particular, Hairston submitted affidavits from Dr. Ricardo Weinstein and Dr.

Maurice B. Sterman and argued that new brain tests showed prejudice resulting from the

trial court's denial of resources to hire a mitigation expert.

On appeal of denial of the second post-conviction application, the Idaho Supreme

Court determined that (1) Hairston's claim was subject to res judicata, as the court had

addressed the claim in the first post-conviction proceeding; and (2) because Hairston

knew of the claim within the statutory time limits, it did not satisfy the narrow exception

of Idaho Code § 19-2719(5) and could not be raised in a second or successive application.

*Hairston v. State*, 156 P.3d 552 (Idaho 2007), *cert. granted, judgment vacated*, 552 U.S.

1227 (2008) (remanded to the Idaho Supreme Court to consider retroactivity of *Ring v.*

*Arizona*, 536 U.S. 584 (2002), in light of *Danforth v. Minnesota*, 552 U.S. 264 (2008)).[1]

This federal case was stayed from 2001 to 2007 during Hairston's pursuit of his

second post-conviction action. After the Idaho Supreme Court rejected Hairston's

attempts to revisit mitigation to allow new evidence of brain damage to be considered,

Hairston requested an evidentiary hearing in this federal habeas action to present four

additional experts' testimony. This Court denied the request for an evidentiary hearing as

unnecessary to decide the claim Hairston had presented in his pleadings:

> Hairston emphasizes evidence of his alleged brain dysfunction, which he
> contends establishes prejudice from the denial of a mitigation specialist.
> This contention assumes too much; that is, Hairston has not drawn a
> persuasive causal link between the absence of a mitigation specialist—
> primarily an *investigative* expert—and the lack of evidentiary development
> on whether he has brain damage, which would be supplied by

---

[1]      Petitioner's third post-conviction application raised the *Ring* claim. That action was consolidated with other Idaho death penalty cases, after which relief was denied. *See Rhoades v. State*, 233 P.3d 61 (Idaho 2010).

**MEMORANDUM DECISION AND ORDER - 4**

psychological, psychiatric, or medical experts. Beyond requesting the
appointment of Dr. Corgiat, who apparently did not find evidence of brain
damage, Hairston did not ask for funding for those types of additional
mental health experts in state court.

Accordingly, the Court concludes that the new facts do not place the
issue in such a different light that Hairston would be able to establish that
the state court's adjudication of this constitutional claim, based on its
determination that he was given adequate tools and resources for his
defense, was an unreasonable one. Hairston is not entitled to an
evidentiary hearing.

(Order, Dkt. 192, p. 60.)

Judgment was entered in this case on March 3, 2011, eleven years after it began.

(Dkt. 193.) A certificate of appealability was issued over several claims. While the case

was on appeal to the United States Court of Appeals for the Ninth Circuit, the State

requested and was granted a limited remand for reconsideration of the certified aspect of

Claim 21 (the mitigation subclaim only) in light of *Martinez v. Ryan*.

*Martinez* was an unprecedented and unusual development in habeas corpus law.

Rather than occupying their usual positions, petitioners' lawyers now often argue that

their clients' claims are procedurally defaulted to take advantage of *Martinez*, while state

attorneys counter that the claim was decided on the merits, putting it beyond the scope of

the *Martinez* exception.[2] Further, *Martinez* has created the anomaly that procedurally

defaulted claims may be heard at a substantial advantage over properly exhausted claims,

---

[2]    The general rule is that errors of counsel during a post-conviction action cannot serve as a basis for cause to
excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). *Martinez* created an exception to
this rule that applies only to procedurally-defaulted claims of ineffective assistance of trial counsel. 132 S. Ct. at
1315; *see also Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013) (expanding *Martinez* to underlying
claims of ineffective assistance of *direct appeal* counsel). Under a traditional (non-*Martinez*) cause and prejudice
analysis, it is better for petitioners to have had their claim decided on the merits in state court because they cannot
rely on ineffective assistance of post-conviction counsel to excuse a procedural default.

**MEMORANDUM DECISION AND ORDER - 5**

because *Martinez* claims can be heard de novo on federal habeas corpus review, escaping deferential AEPDA review and the *Pinholster* prohibition on development of new evidence placed on claims properly exhausted on the merits.[3]

It is no surprise here that Hairston is attempting to shoehorn an ineffective assistance of trial counsel claim into his already-adjudicated petition to take advantage of the *Martinez* gateway to de novo review. After proceeding through a series of procedural inquiries to determine whether *Martinez* applies to Claim 21, the Court concludes that (1) Hairston's claim is new, (2) he cannot re-open this case to assert a new claim, and (3) he must file a second federal habeas corpus petition, requiring prior approval of the United States Court of Appeals for the Ninth Circuit.

## DISCUSSION

1. **Hairston Pleaded the Pertinent Subsection of Claim 21 as a Trial Court Error Claim**

Hairston admits that, because the *Martinez* exception did not exist at the time he filed his Second Amended Petition, his counsel purposely couched the ineffective assistance of counsel mitigation claim in terms of trial court error—a related claim that *was* properly exhausted. (Supplemental Reply, Dkt. 231, p. 7.) In other words, habeas counsel selected the procedurally stronger claim over the procedurally weaker claim. Now that *Martinez* is available, Hairston argues that this Court mistakenly interpreted the claim, even though the Court's interpretation follows from the manner in which habeas counsel chose to raise it.

---

[3]     *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

Hairston has not persuaded the Court that *Martinez* and its progeny have worked such a significant change in habeas corpus procedure that Hairston is permitted at the post-judgment stage of proceedings to re-characterize an old claim as a factually and legally different claim. Rather, a fundamental principle of fair litigation is that a respondent cannot respond to, nor can a court adjudicate, claims that are not adequately raised in the pleadings. For that reason, lawyers are particularly trained in the art and strategy of raising claims. Capital habeas case petitioners' lawyers, in particular, have honed the skill of raising both fully-exhausted and procedurally-defaulted claims, knowing the consequences of the failure to do so. As a result, the plethora of claims raised in each capital case can extend the life of the case (and their death-sentenced client) for decades, clearly beyond the intent of the Antiterrorism and *Effective* Death Penalty Act.

In 2007, well before the "remarkable" but "limited" *Martinez* decision,[4] Hairston's experienced counsel who drafted his Second Amended Petition selected a particular claim to raise—that the *trial court's refusal to provide Hairston with a mitigation expert* violated several of Hairston's constitutional rights, including his right to effective assistance of counsel. (Dkt. 99.) Though a more traditional but procedurally-defaulted claim was available—centering on allegations that Hairston's constitutional right to effective assistance of counsel was violated by counsel's *deficient and prejudicial actions*

---

[4]       *Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012).

MEMORANDUM DECISION AND ORDER - 7

*in investigating and presenting mitigation evidence*—Hairston's counsel selected a different claim.

During argument of the merits of Hairston's claims in 2010, without any attempt to amend the pleadings, Hairston's counsel for the first time attempted to transform the claim they *had chosen* to bring into the claim they had chosen *not* to bring, relying on two United States Supreme Court cases that were available to counsel prior to the filing of the Second Amended Petition, *Wiggins v. Smith*, 539 U.S. 510, 523 (2003), and *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). (Dkt. 161, pp. 29-31.) That attempt at transformation was rejected in the Order denying relief on the Second Amended Petition (Dkt. 192), and it is rejected again today.

Claim 21 is a hodgepodge of different subclaims, despite its heading of "Ineffective Assistance of Trial Counsel" and its general preface that Hairston was denied his constitutional *right to the effective assistance of counsel* under the Fifth, Sixth, Eighth, and Fourteenth Amendments. (Dkt. 99, p. 34.) The "Supporting Facts" subheading that follows the general preface does relatively nothing to point the way anywhere, because Hairston's counsel has mixed up several ineffective assistance of counsel subclaims based on the Sixth Amendment with several different trial court error subclaims based upon the Fifth Amendment right to remain silent, the Eighth and Fourteenth Amendment right to a reliable capital sentencing proceeding, the Fourteenth Amendment right to adequate resources to support a sentencing defense, and the Fourteenth Amendment right to equal protection. But it is not the mixing up of claims that does in Hairston's argument, but the absence of facts.

**MEMORANDUM DECISION AND ORDER - 8**

Unlike other subclaims alleging deficient performance of trial counsel, the only "supporting facts" regarding mitigation allege that the trial court's ruling *caused* counsel to be ineffective, but not the reverse—that counsel themselves performed deficiently, in turn causing the trial court to reject the request for a mitigation expert. In fact, missing from the pleadings is any reference to trial counsel's request for a mitigation expert only two days before the sentencing hearing, and the trial court's mention of the dilatory request in its ruling. While other subclaims brought under the heading of Claim 21 clearly articulate failures of counsel, no failures attributable to counsels' acts or omissions relate to mitigation.

Trying to wedge Claim 21 into the *Martinez* exception, Hairston relies upon the following paragraphs in his Second Amended Petition to support his position that he did, in fact, present a traditional ineffective assistance of counsel claim rather than a trial court error claim:

> 158.   Mr. Hairston was denied his federal constitutional right to the effective assistance of counsel under the Sixth Amendment, to a reliable capital sentencing proceeding, under the Eighth and Fourteenth Amendments, and to due process and equal protection of laws under the Fourteenth Amendment by the trial court's denial of resources to hire a mitigation specialist. *See  Strickland v. Washington,* 466 U.S. 668 (1984) *and Ake v. Oklahoma,* 470 U.S. 68 (1985).

> 159.   Mr. Hairston is and was at the time of his trial an indigent person who lacked the funds to hire an attorney, expert witnesses and investigators.

> 160.   Although this was a death penalty case, the trial court refused Mr. Hairston's request for a court funded mitigation specialist to assist him in investigating, gathering and  presenting mitigation evidence at the sentencing hearing.

**MEMORANDUM DECISION AND ORDER - 9**

161.    Had such a mitigation specialist been used, mitigation evidence would have been presented to the sentencer which would, to a reasonable likelihood, have persuaded the sentencer that the death sentence was not warranted in Mr. Hairston's case.

162.    In order to provide the effective assistance of counsel in a capital sentencing proceeding, defense counsel must conduct a complete and thorough investigation into the defendant's background.[5]

163.    The trial court's refusal to order that Mr. Hairston be assisted by a publicly funded mitigation expert deprived Mr. Hairston of the effective assistance of counsel.

164.    Mr. Hairston was prejudiced because had such a mitigation investigation been conducted, there is a reasonable probability that Mr. Hairston would have received a sentence of less than death, because the evidence which would have been discovered and presented, including petitioner's sexual, emotional and physical abuse as a child so significantly impacted his ability to make choices in companions and conduct would have been "sufficiently compelling" to [render] the death penalty unjust.

165.    The trial court's deprivation of Mr. Hairston's right to a mitigation specialist subjected him to disparate treatment from criminal defendants who are not indigent.

(Dkt. 99, pp. 36-37).

So pleaded, the claim is one of trial court error. The Second Amended Petition contains facts supporting a trial court error claim and legal theories particular to a trial court error claim—the consequential Sixth Amendment denial of the effective assistance of counsel, the Eighth Amendment deprivation of a reliable sentencing proceeding, and the Fourteenth Amendment right to due process and equal protection. Claim 21 provides no notice to Respondent or the Court that any act or omission of trial counsel violated

---

[5]    This statement is only an empty recitation of the standard of law; it does not allege that or how trial counsel performed deficiently.

**MEMORANDUM DECISION AND ORDER - 10**

Hairston's constitutional rights regarding mitigation evidence at sentencing.[6] In other

words, notwithstanding the bare title of the claim, Hairston purposely alleged that trial

error was the *cause*, and the thwarting of trial counsel's effectiveness was the *effect*.

Under today's status of the law, *Martinez* does not extend to trial court error claims. *See*

*Martinez*, 132 S. Ct. at 1315 (limiting scope of exception to claims where trial counsel

performed deficiently and caused prejudice); *see Hunton v. Sinclair*, 732 F.3d 1124, 1126,

1127 (2013) (refusing to extend *Martinez* to other claims, such as those based on *Brady v.*

*Maryland*, 373 U.S. 83 (1963)).

Hairston further argues that it was erroneous for this Court to construe Claim 26 as

subsuming Claim 21, because Claim 26 was indeed different, being entitled, "Denial of

Resources," while Claim 21 was entitled "Ineffective Assistance of Counsel." However,

as explained previously, a title does not a claim make. Whatever habeas counsel's

intentions were when counsel named the sections, counsel did not follow through and state

any deficiencies *of counsel* regarding mitigation in the body of the Second Amended

Petition, instead choosing to assert factual allegations solely regarding *the trial court's*

mitigation decision in two different places in the pleadings, Claim 21 and Claim 26. There

are no facts in either section alleging counsel sought a mitigation specialist *deficiently or*

*dilatorily*, which in turn caused the trial court to deny the request. Nor are there any facts

---

[6]      In fact, the claim Hairston asserts today bears little resemblance to anything asserted in his pleadings. Now, two decades after Hairston's conviction and sentencing, current counsel are trying to recast Hairston's claim that he was denied the assistance of Mary Goody, a general mitigation expert whose primary function was to gather facts and records, into a claim centered on Dr. Corgiat's alleged incompetence in his mental health evaluation of Hairston.

**MEMORANDUM DECISION AND ORDER - 11**

alleging counsel performed in a deficient manner that would rank them below other

reasonable counsel who were denied a mitigation expert by the trial court.

For all of these reasons, the Court rejects Hairston's argument that a traditional

ineffective assistance of trial counsel claim based on his trial attorneys' alleged deficient

performance was presented in Claim 21.

### 2.   Claim 21 Was Decided on the Merits in State Court

Claim 21—as presented in Hairston's federal pleadings in this matter—was

decided on the merits by the Idaho Supreme Court as a trial court error claim, not an

ineffective assistance of trial counsel claim. (State's Lodging C-17, p. 27.) Because

Claim 21 (as presented) is *not* procedurally defaulted, but was decided on the merits in

state and federal court, it is not subject to *Martinez*—a case that does nothing more than

provide an exception for procedurally defaulted claims of ineffective assistance of

counsel. 132 S. Ct. at 1315. This Court's use, in its prior decision, of a short-version

label, "procedurally defaulted," to describe the new factual and legal allegations in

Hairston's merits argument, rather than use of a long statement that the new factual

allegations and legal theory *would be* considered procedurally defaulted *if* they had been

raised in the pleadings (Dkt. 192, pp. 39-40), does not mean that the door to federal

habeas corpus review has been unlocked by the *Martinez* key for this never-before-raised

claim, as Hairston suggests.

MEMORANDUM DECISION AND ORDER - 12

### 3.  The New Ineffective Assistance of Trial Counsel Claim is not a "Fundamentally Altered" Claim as defined by *Dickens*

In *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), the United States Court of Appeals for the Ninth Circuit determined that "[a] claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts, or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Id.*, 740 F.3d at 1318 (citations and internal quotation marks omitted). Hairston's claim is not "fundamentally altered" because neither the facts nor the precise legal theory were ever presented in his Second Amended Petition before judgment was entered—a requirement for *Dickens* to apply. In other words, had Hairston presented the trial counsel mitigation claim in his Second Amended Petition, it might have been deemed a fundamentally altered claim, but in order to qualify as fundamentally altered, it must be presented in a federal petition, which it was not. The "fundamental altering" refers to a change in evidentiary strength between the time the claim was asserted in state court and the time it is asserted in federal court; it does not refer to a post-judgment claim asserted in federal court that a petitioner tries to fundamentally alter via argument and without amendment during the regular course of federal proceedings.

### 4.  The Court Cannot Re-open an Adjudicated Petition to Hear a New Post-Judgment Claim

Hairston now wants to present a new claim in federal court (known to him since his first state post-conviction petition was filed in 1996); however, problematic for him is the fact that his federal habeas corpus petition was adjudicated to a conclusion in 2011. A

MEMORANDUM DECISION AND ORDER - 13

petitioner cannot have a new claim adjudicated post-judgment without a procedurally-proper mechanism to allow the federal district court to hear the claim, when it was never raised in a federal habeas petition before the district court in the first instance. *Cf. Sexton v. Cozner*, 679 F.3d 1150 (9th Cir. 2012).[7] Therefore, a remand alone does not qualify Hairston's new claim for adjudication without a proper procedural mechanism for the district court to hear the claim.

### 5.  Hairston Cannot Raise His New Claim in a Rule 60(b) Motion

The next question is whether Hairston can raise his new *Martinez* claim via a Rule 60(b) post-judgment motion, or whether it is barred by the successive petitions rule of § 2244 and *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Lopez v. Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012), the Ninth Circuit observed that *Martinez* left the lower courts with "some leeway as to how to approach" claims presented in a procedural posture where the *Martinez* issue "intertwined" with Rule 60(b). However, unlike Hairston, Lopez *had* raised his ineffective assistance of counsel claims in his federal petition prior to adjudication. Therefore, the Court concludes that *Lopez* does not help Hairston avoid facing *Gonzalez* head-on.

## CONCLUSION

Accordingly, the Court concludes that Hairston's ineffective assistance of trial counsel mitigation claim is a new claim he proposes to raise for the first time after entry

---

[7]     On appeal, Sexton sought a limited remand under *Martinez* so the district court could review the merits of two new claims for ineffective assistance of trial counsel that he had raised in his federal habeas petition, but that the district court ruled were procedurally defaulted.

**MEMORANDUM DECISION AND ORDER - 14**

of judgment, and, therefore, it must be brought in a second petition if he receives

authorization to do so from the Ninth Circuit Court of Appeals. *See* 28 U.S.C. § 2244*;*

*Jones v. Ryan*, 733 F.3d 825, 842, 846 (9th Cir. 2013) (holding that, because "none of the

claims Jones raises in his pending motion were included in his first federal habeas corpus

petition," he had to satisfy 28 U.S.C. § 2244(b)(3)(A), and observing that "even the

pressures of death penalty litigation do not permit us to depart from established

jurisprudence").

## ORDER

**IT IS ORDERED** that Hairston must seek authorization from the United States

Court of Appeals to bring the ineffective assistance of trial counsel mitigation claim in a

second petition before it can be adjudicated in this court. This case will not be re-opened,

nor will the certificate of appealability be expanded to include the issue decided in this

Order. The Clerk of Court shall forward a copy of this Order to the United States Court of

Appeals so that the appeal can proceed.

DATED: August 16, 2016

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 15**