Nicole Owens
Executive Director
Jonah J. Horwitz, ID Bar No. 10494
Mary E. Spears, IN Bar No. 27353-49
Assistant Federal Defenders
Federal Defender Services of Idaho
Capital Habeas Unit
702 W. Idaho St., Ste. 900
Boise, ID 83702
Telephone:  208-331-5530
Facsimile:   208-331-5559
ECF:   Jonah_Horwitz@fd.org
          Mary_Spears@fd.org

Attorneys for Petitioner James H. Hairston


## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES H. HAIRSTON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-00-303-S-BLW |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| TIM RICHARDSON,[1] Warden of the | ) | MEMORANDUM IN SUPPORT |
| Idaho Maximum Security Institution, | ) | OF MOTION TO STAY FEDERAL |
| Department of Correction, State of | ) | HABEAS PROCEEDINGS |
| Idaho, | ) | PENDING STATE POST- |
| | ) | CONVICTION LITIGATION |
| Respondents. | ) | |
| | ) | |

---

[1] Tim Richardson is the current Warden of the Idaho Maximum Security Institution. https://www.idoc.idaho.gov/content/locations/prisons/idaho_maximum_security_institution.  As such, he should be automatically substituted in as respondent in this matter for his predecessor.  *See* Fed. R. Civ. P. 25(d); Rule 2(a) of the Rules Governing Section 2254 Cases.

MEMORANDUM IN SUPPORT OF MOTION TO STAY - 1

To promote comity and judicial efficiency, and to allow a significant issue to be decided in the first instance by the state courts, Petitioner James H. Hairston respectfully requests a stay of the instant federal habeas proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005),[2] until the ongoing state post-conviction litigation concludes.

## I.      Background

Most of the background relevant to the present motion is presented in Mr. Hairston's memorandum in support of his request to provide further briefing on the impact of *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022).  *See* Dkt. 303-1.[3]  Mr. Hairston only discusses the few additional background points necessary here.

In the case at bar, Mr. Hairston has a "mixed" petition containing both exhausted and unexhausted claims.  The exhausted claims were previously adjudicated by the Court.  *See* Dkt. 192.  And as for the unexhausted claims, they are the subject of litigation pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).  *See, e.g.*, Dkt. 258.  Confronted with a mixed petition, district courts are authorized by *Rhines* to stay the proceedings and hold them in abeyance while the inmate "returns to state court to exhaust his previously unexhausted claims."  544 U.S. at

---

[2] In this brief, unless otherwise noted, all internal quotation marks, citations, and alterations are omitted, and all emphasis is added.

[3] If the Court grants the present motion, Mr. Hairston does not believe that additional briefing on *Ramirez* will be necessary until the post-conviction proceedings are resolved, since the impact of the decision will likely be significantly affected by how the state case plays out.  However, if the Court declines to stay the appeal, then the briefing on *Ramirez* would remain necessary, for the consequences of the decision would then have to be addressed in this Court's opinion, as outlined in the earlier motion.  *See* Dkt. 303-1.

MEMORANDUM IN SUPPORT OF MOTION TO STAY - 2

275.  "Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court."  *Id.* at 275–76. Ordinarily, the stay is not dissolved until any appeals in state court are fully resolved.  *See Lopez-Garcia v. Wasden*, No. CV-07-441, 2008 WL 166811, at *2 (D. Idaho Jan. 16, 2008) (granting a *Rhines* stay "until the state court matter has become final after the Idaho Supreme Court issues its remittitur on appeal").[4]

Mr. Hairston has moved expeditiously in this process, filing a post-conviction petition[5] on June 30, 2022, within six weeks of *Ramirez*, raising the sub-claims that he had been pursuing under *Martinez.  See* Ex. 1.  He now seeks a stay of the federal habeas proceedings until that state action is adjudicated, so as to allow the Idaho Supreme Court to resolve a significant question in an orderly fashion.

## II.   Analysis

The stay-and-abey procedure is called for "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation

---

[4] If the Court prefers, it could also issue a stay only until Mr. Hairston's petition is resolved at the trial level, and then re-evaluate the need for its continuation in light of the district judge's ruling.  *See Fields v. Klauser*, No. CV 95-422, 2008 WL 3992255, at *1 (D. Idaho Aug. 27, 2008) (taking that approach).

[5] Given the need to produce a petition under great time pressure, undersigned counsel prepared the pleading.  However, they immediately and successfully moved for the appointment of the State Appellate Public Defender, which is sole counsel of record now.  *See* Ex. 2.

tactics." *Rhines*, 544 U.S. at 278.  Those criteria are all satisfied here.  Mr. Hairston will take each in turn.

### A.    Mr. Hairston has good cause.

First, Mr. Hairston has good cause for now exhausting all of the facts in support of his sub-claims.  That is apparent first from the fact that the Ninth Circuit has held that good cause for a *Rhines* stay exists when post-conviction counsel ineffectively challenged the trial attorney's performance.  *See Blake v. Baker*, 745 F.3d 977, 982–84 (9th Cir. 2014).  Mr. Hairston has already established post-conviction counsel's ineffectiveness, *see* Dkt. 258 at 47–56, and he incorporates his earlier presentation here.  In addition, this Court at an earlier stage of the case found that post-conviction counsel did not adequately present the issue at hand, Dkt. 192 at 3 –41, further confirming their ineffectiveness.  There is accordingly cause as a matter of binding Ninth Circuit law.

It is also significant that Mr. Hairston was prohibited by state law from raising the facts earlier.  Current Idaho Supreme Court precedent bars an inmate from alleging ineffective assistance of post-conviction counsel as an excuse to reach a procedurally defaulted claim.  *See Row v. State*, 21 P.3d 895, 900 (Idaho 2001); *McKinney v. State*, 992 P.2d 144, 153 (Idaho 1999).  Mr. Hairston's theory for asserting the sub-claims in state court now is that *Shinn v. Ramirez,* 142 S. Ct. 1718 (2022), provides an appropriate basis for that Idaho precedent to be revisited.  *See* Ex. 1 at 3–10.  In particular, Mr. Hairston reasonably assumed that he would be permitted to develop the facts supporting his sub-claims in federal court under

*Martinez.*  That assumption was plainly rational.  *See Row v. Beauclair*, No. 1:98-cv-240, 2015 WL 1481416, at *20 (D. Idaho Mar. 31, 2015) (ordering an evidentiary hearing under *Martinez* and indicating that "the purpose of *Martinez* would be defeated if new evidence were permitted at the *Martinez* qualifying-round hearing, but not at the actual merits final-round hearing"); *see also Row v. Miller*, No. 1:98-cv-240, 2021 WL 4553117, at *2 (D. Idaho Sept. 30, 2021) (expressing the tentative conclusion based on a lengthy hearing that Ms. Row had "presented sufficient evidence to show that she will prevail on the merits of" the claims at issue). Because *Ramirez* abruptly destroyed that assumption, it is proper for him to now turn to state court.  For the same reason, the issuance of the decision in *Ramirez* is an appropriate triggering event for a new post-conviction proceeding under Idaho state law.  *See Windom v. State*, 398 P.3d 150, 156–57 (Idaho 2017) (recognizing that a decision from the U.S. Supreme Court can set the clock running for a new state post-conviction claim); *Pizzuto v. State*, 202 P.3d 642, 648 (Idaho 2008) (same).

It is particularly logical for the state courts to consider Mr. Hairston's new claim given the reasoning of *Ramirez*.  For the decision was strongly animated by an interest in establishing the primacy of state courts as the preferred forums for adjudicating federal constitutional claims brought by state prisoners.  *See, e.g.*, *Ramirez*, 142 S. Ct. at 1730–31 (emphasizing that "[t]he States possess primary authority for defining and enforcing the criminal law and for adjudicating constitutional challenges to state convictions"); *id.* at 1731 (noting that "federal intervention imposes significant costs on state criminal justice systems," as "[i]t

disturbs the State's significant interest in repose for concluded litigation"); *id.* at 1739 ("In our dual-sovereign system, federal courts must afford unwavering respect to the centrality of the trial of a criminal case in state court."). *Ramirez* was thus designed to incentivize more litigation in state court, and post-conviction proceedings are the fitting result.

Relatedly, it was more than justifiable for Mr. Hairston to refrain from asserting his *Martinez* issues in state court until now because the pre-*Ramirez* law in the Ninth Circuit expressly excused him from any exhaustion requirement with respect to those facts. *See Dickens v. Ryan*, 740 F.3d 1305, 1322 n.17 (9th Cir. 2014) (en banc). It is only now, when *Ramirez* has shifted the focus to state court, that exhaustion has become necessary.

In his state post-conviction proceeding, Mr. Hairston is advocating for the creation of a *Martinez*-type avenue in the Idaho courts. *See* Ex. 1 at 3–10. The Idaho Supreme Court has already begun moving in that direction. *See Hall v. State*, 315 P.3d 798, 803–05 (Idaho 2013) (holding that death-sentenced inmates have a right to conflict-free counsel in post-conviction, which is properly reviewed "through a Sixth Amendment framework"). Other states have adopted *Martinez*-esque exceptions for their own post-conviction regimes. *See, e.g.*, *Crump v. Warden*, 934 P.2d 247, 253 (Nev. 1997). Under the circumstances, the possibility of Idaho doing so is not insubstantial, and it further strengthens the case for a stay. *See Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005) (remanding for the district

court to consider a *Rhines* motion because it was "debatable" whether state law would allow a successive post-conviction petition).

It is also critical to remember that *Ramirez* did not purport to overrule *Martinez*. *See, e.g.*, *Ramirez*, 142 S. Ct. at 1737 (explaining that "*Martinez* itself cuts against respondents' proposed result"). Thus, it remains good law after *Ramirez* that, as the U.S. Supreme Court held in *Martinez*, the incompetent performance of post-conviction counsel should not preclude a prisoner from asserting a meritorious claim of trial ineffectiveness. There are two ways to avoid the outcome forbidden by *Martinez*. One is for the state courts to address the merits of the underlying constitutional claim. The other is for the relevant evidence to be presented in state court, so that it can later be considered in Mr. Hairston's federal habeas proceedings. Either path would benefit from a stay.

In the same vein, the denial of a *Rhines* stay would create complex and unnecessary pragmatic challenges. If a *Rhines* stay is denied, the state post-conviction proceedings are almost certain to conclude before the federal habeas litigation does, given the respective timelines in the two court systems. *Compare Hairston v. State*, 472 P.3d 44, 46, 52 (Idaho 2020) (affirming the denial of a successive post-conviction petition brought by Mr. Hairston about two-and-a-half years after it was initially filed), *with Creech v. Davis*, 9th Cir., No. 10-99015 (reflecting that a federal habeas appeal initiated by an Idaho death-row inmate remains pending at the Ninth Circuit after resuming more than five years earlier).

That set of circumstances will likely give rise to knotty procedural questions. For instance, if Mr. Hairston's recently filed post-conviction petition is ultimately denied on procedural grounds, he will likely be in the Ninth Circuit by then. What options the Ninth Circuit would have are unclear. A remand would be a strong possibility, so that this Court could determine in the first instance how to deal with the developments in state post-conviction. And a remand might well moot all of the work done on the Ninth Circuit proceedings in the meantime. The cleaner approach, in the absence of outright relief, is to wait for the post-conviction case to reach its natural conclusion, so that all of the resulting questions can be dealt with by this Court in the first instance, in accordance with standard judicial practices. *See Detrich v. Ryan*, 740 F.3d 1237, 1248–49 (9th Cir. 2013) (en banc) (plurality op.) (reiterating the "general assumption . . . that [the Ninth Circuit] operates more effectively as a reviewing court than as a court of first instance" and there is "no reason why a remand to the district court in a *Martinez* case should be treated differently from a remand in other cases").

**B.     The claim is potentially meritorious.**

For the second *Rhines* stay factor—whether the claim is potentially meritorious—Mr. Hairston relies on his *Martinez* briefing as well as the materials referred to therein, which he incorporates here by reference. *See* Dkts. 258, 289. It is also notable in the same regard that this Court previously granted a certificate of appealability on the claim that trial counsel rendered ineffective assistance by failing to adequately investigate and present mitigating evidence. *See* Dkt. 192 at

64.  That indicates that the claim "deserve[s] encouragement to proceed further."
*Miller-El v. Cockrell*, 537 U.S. 322 (2003).  An issue that deserves encouragement to
proceed further is by definition not "plainly meritless," *Rhines*, 544 U.S. at 277, and
that likewise demonstrates why the second *Rhines* factor is satisfied.  The strength
of the claim, and of Mr. Hairston's state-law theory for bringing it now, also means
that judicial efficiency counsels in favor of the stay, because "if Petitioner obtains
relief in state court the federal case would likely become moot."  *Fields*, 2008 WL
3992255, at *1 (granting a *Rhines* stay in a capital habeas case).

## C.    Mr. Hairston has not engaged in abusive litigation or delay.

The third and final factor is whether the petitioner is guilty of "abusive
litigation tactics or intentional delay," *Rhines*, 544 U.S. at 278, and Mr. Hairston
did not.  As set forth above, Mr. Hairston proceeded on the good-faith premise that
he would be allowed to develop his *Martinez* facts in federal court.  When the
Supreme Court declared otherwise, he immediately prepared a post-conviction
petition and filed it within forty-two days of *Ramirez*, as mandated by Idaho's
extremely short timeline.  *See Fields v. State*, 314 P.3d 587, 590 (Idaho 2013).
Undersigned counsel are now requesting the stay less than three weeks later, in the
pleading to which it is best suited, after conducting an extensive amount of work in
this and their other *Ramirez* cases to prepare the post-conviction petitions and get
successor counsel situated to prosecute the actions, and all while tending to their
duties to their other capital clients.  There has been no abusive litigation or delay.
*See Speer v. Dretke*, No. 2:04-cv-269, 2008 WL 2065798, at *3 (E.D. Tex. May 13,

2008) (finding the third *Rhines* factor satisfied where the inmate took "only five months" after filing a motion for discovery related to the new claims).

## III.   Conclusion

Mr. Hairston has a powerful claim, and a well-founded basis to now bring it in state post-conviction.  A *Rhines* stay is appropriate, and Mr. Hairston respectfully requests one.

Respectfully submitted this 19th day of July 2022.

/s/ *Jonah J. Horwitz*
Jonah J. Horwitz
Mary E. Spears

Attorneys for Petitioner James H. Hairston

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which is designed to send a Notice of Electronic Filing to persons including the following:

L. Lamont Anderson
lamont.anderson@ag.idaho.gov

/s/ *Heidi Thomas*
Heidi Thomas